UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARLA K. TAFOLLA, | ) Case No. SA CV 14-867-SP |
| Plaintiff, | ) |
| v. | ) MEMORANDUM OPINION AND ) ORDER |
| CAROLYN W. COLVIN, Acting Commissioner of Social Security Administration, | ) |
| Defendant. | ) |

## I.

## **INTRODUCTION**

On June 9, 2014, plaintiff Marla K. Tafolla filed a complaint against the Commissioner of the Social Security Administration ("Commissioner"), seeking a review of a denial of supplemental security income ("SSI"). Plaintiff and defendant have consented to proceed for all purposes before the assigned Magistrate Judge pursuant to 28 U.S.C. § 636(c). The court deems the matter suitable for adjudication without oral argument.

Plaintiff presents one issue for decision, whether the Administrative Law Judge ("ALJ") properly considered the opinions of four of plaintiff's treating physicians: Dr. Bennett, Dr. Berry, Dr. Vu, and Dr. Khan – particularly in relation to plaintiff's RFC and her physical sitting, standing, and walking limitations. Memorandum in Support of Complaint ("P. Mem.") at 4-9;  Memorandum in Support of Defendant's Answer ("D. Mem.") at 1-4.

Having carefully studied the parties' moving and opposing papers, the Administrative Record ("AR"), and the decision of the ALJ, the court concludes that, as detailed herein, the ALJ did not provide specific and legitimate reasons for rejecting these treating physicians' opinions.  Consequently, the court remands this matter to the Commissioner in accordance with the principles and instructions enunciated in this Memorandum Opinion and Order.

## II.

## **FACTUAL AND PROCEDURAL BACKGROUND**

Plaintiff, who was forty-seven years old the date of her SSI application, has a high school education.  AR at 31, 94, 152, 162, 601.  She has no past relevant work.  *Id.* at 164-67, 577, 626.

On September 22, 2008, plaintiff filed an application for SSI, due to lower back pinched nerves; left hip and leg pain; limited mobility and constant pain; and depression and drowsiness from pain medications.  *Id*. at 94, 156.  The Commissioner denied plaintiff's application initially and upon reconsideration, after which she filed a request for a hearing.  *Id.* at 54, 58-62, 66-74, 76-79.

On July 26, 2010, plaintiff, represented by counsel, appeared and testified before ALJ Helen E. Hess.  *Id.* at 598-613.  The ALJ also heard testimony from vocational expert Alan Boroskin.  *Id.* at 613-18.  On August 18, 2010, the ALJ denied plaintiff's claim for benefits.  *Id.* at 635-44.  Plaintiff filed a timely request for review of the decision, which the Appeals Council denied.  *Id.* at 1-6.  Plaintiff then filed a complaint in this court.  *Id.* at 665-68.

On March 6, 2013, this court reversed the Commissioner's decision and remanded plaintiff's case to the Commissioner, finding the ALJ erred at step five. *Id.* at 669-687. Meanwhile, plaintiff sustained additional injuries and filed a new SSI claim. *Id.* at 690, 788, 831, 839. In compliance with the court order, the Appeals Council vacated the ALJ's original decision and remanded the case back to the ALJ. *Id* at 690. The Appeals Council ordered the ALJ to consolidate plaintiff's original and subsequent claims for SSI, "offer [plaintiff] the opportunity for a hearing, take any further action needed to complete the administrative record and issue a new decision." *Id.*

On November 6, 2013, plaintiff, again represented by counsel, appeared and testified before the ALJ. *Id.* at 622-25, 629-32. The ALJ also heard testimony Alan Ey, a vocational expert ("VE"). *Id.* at 625-29. On February 27, 2014, the ALJ again denied plaintiff's claim for benefits. *Id.* at 567-79.

Applying the well-known five-step sequential evaluation process, the ALJ found, at step one, that plaintiff had not engaged in substantial gainful activity since September 16, 2008, her SSI application date. *Id.* at 569.

At step two, the ALJ found that plaintiff suffered from the following severe impairments: lumbar disk disease and lumbar radiculopathy. *Id.* The ALJ also found plaintiff's "problems with her knees, bruised ribs, arthritis in her hands, tachycardia-bradycardia syndrome, depression, and anxiety" were non-severe and did not "significantly affect [her] ability to perform basic work." *Id.* at 569-72.

At step three, the ALJ found that plaintiff's impairments, whether individually or in combination, did not meet or medically equal one of the listed impairments set forth in 20 C.F.R. part 404, Subpart P, Appendix 1 (the "Listings"). *Id.* at 572.

The ALJ then assessed plaintiff's residual functional capacity ("RFC"),[1] and determined that she had the capacity to sit for six hours and stand or walk for six hours in an eight-hour work day, but may change position briefly for one to three minutes, every hour; lift or carry twenty pounds occasionally and ten pounds frequently; only occasionally climb stairs, bend, stoop, balance, kneel, crouch, or crawl; never climb ladders, ropes, or scaffolds; never work at unprotected heights; and, prophylactically, due to medication, perform no jobs requiring hyper vigilance or be in charge of the safety operations of others. *Id.*

The ALJ noted, at step four, plaintiff has no past relevant work. *Id.* at 577.

At step five the ALJ found that there were jobs that existed in significant numbers in the national economy that plaintiff could perform, including cashier II and assembler of small products. *Id.* at 578. Consequently, the ALJ concluded plaintiff did not suffer from a disability as defined by the Social Security Act. *Id.* at 579.

The decision of the ALJ stands as the final decision of the Commissioner. *Id.* at 565.

### III.

### STANDARD OF REVIEW

This court is empowered to review decisions by the Commissioner to deny benefits. 42 U.S.C. § 405(g). The findings and decision of the Social Security Administration must be upheld if they are free of legal error and supported by substantial evidence. *Mayes v. Massanari*, 276 F.3d 453, 458-59 (9th Cir. 2001) (as amended). But if the court determines that the ALJ's findings are based on

---

[1] Residual functional capacity is what a claimant can do despite existing exertional and nonexertional limitations. *Cooper v. Sullivan*, 880 F.2d 1152, 1155-56 n.5-7 (9th Cir. 1989). "Between steps three and four of the five-step evaluation, the ALJ must proceed to an intermediate step in which the ALJ assesses the claimant's residual functional capacity." *Massachi v. Astrue*, 486 F.3d 1149, 1151 n.2 (9th Cir. 2007).

legal error or are not supported by substantial evidence in the record, the court may reject the findings and set aside the decision to deny benefits. *Aukland v. Massanari*, 257 F.3d 1033, 1035 (9th Cir. 2001); *Tonapetyan v. Halter*, 242 F.3d 1144, 1147 (9th Cir. 2001).

"Substantial evidence is more than a mere scintilla, but less than a preponderance." *Aukland*, 257 F.3d at 1035. Substantial evidence is such "relevant evidence which a reasonable person might accept as adequate to support a conclusion." *Reddick v. Chater*, 157 F.3d 715, 720 (9th Cir. 1998); *Mayes*, 276 F.3d at 459. To determine whether substantial evidence supports the ALJ's finding, the reviewing court must review the administrative record as a whole, "weighing both the evidence that supports and the evidence that detracts from the ALJ's conclusion." *Mayes*, 276 F.3d at 459. The ALJ's decision "'cannot be affirmed simply by isolating a specific quantum of supporting evidence.'" *Aukland*, 257 F.3d at 1035 (quoting *Sousa v. Callahan*, 143 F.3d 1240, 1243 (9th Cir. 1998)). If the evidence can reasonably support either affirming or reversing the ALJ's decision, the reviewing court "'may not substitute its judgment for that of the ALJ.'" *Id.* (quoting *Matney v. Sullivan*, 981 F.2d 1016, 1018 (9th Cir. 1992)).

## IV.

## **DISCUSSION**

Plaintiff argues that the ALJ failed to properly consider the opinions of all of her treating physicians: Dr. Bennett, Dr. Berry, Dr. Vu, and Dr. Khan. P. Mem. at 5-9. Plaintiff contends the ALJ's reasons for rejecting her treating physicians' opinions – specifically regarding her limited ability to sit, stand, and walk – were not specific and legitimate or supported by substantial evidence. *Id.* at 7. The court agrees.

In determining whether a claimant has a medically determinable impairment, among the evidence the ALJ considers is medical evidence. 20 C.F.R.

§ 416.927(b). In evaluating medical opinions, the regulations distinguish among three types of physicians: (1) treating physicians; (2) examining physicians; and (3) non-examining physicians. 20 C.F.R. § 416.927(c), (e); *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996) (as amended). "Generally, a treating physician's opinion carries more weight than an examining physician's, and an examining physician's opinion carries more weight than a reviewing physician's." *Holohan v. Massanari*, 246 F.3d 1195, 1202 (9th Cir. 2001); 20 C.F.R. § 416.927(c)(1)-(2). The opinion of the treating physician is generally given the greatest weight because the treating physician is employed to cure and has a greater opportunity to understand and observe a claimant. *Smolen v. Chater*, 80 F.3d 1273, 1285 (9th Cir. 1996); *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989).

Nevertheless, the ALJ is not bound by the opinion of the treating physician. *Smolen*, 80 F.3d at 1285. If a treating physician's opinion is uncontradicted, the ALJ must provide clear and convincing reasons for giving it less weight. *Lester*, 81 F.3d at 830. If the treating physician's opinion is contradicted by other opinions, the ALJ must provide specific and legitimate reasons supported by substantial evidence for rejecting it. *Id.* at 830. Likewise, the ALJ must provide specific and legitimate reasons supported by substantial evidence in rejecting the contradicted opinions of examining physicians. *Id.* at 830-31. The opinion of a non-examining physician, standing alone, cannot constitute substantial evidence. *Widmark v. Barnhart*, 454 F.3d 1063, 1067 n.2 (9th Cir. 2006); *Morgan v. Comm'r*, 169 F.3d 595, 602 (9th Cir. 1999); *see also Erickson v. Shalala*, 9 F.3d 813, 818 n.7 (9th Cir. 1993).

### 1. Dr. Bennett's and Dr. Khan's Opinions

Beginning in March of 2007, plaintiff was treated for "low back and left leg pain" at Chapman medical center. AR at 191. After an MRI revealed "a 3-mm central disk protrusion at L5-S1 planes around the left L-5 traversing nerve root," plaintiff's primary treating physician, Dr. Berry, referred plaintiff to Dr. Bennett at

the medical center. *Id.* at 540. Dr. Bennett managed plaintiff's pain and treated plaintiff for various related ailments over the course of several years. 191-94, 275-76, 279-82, 296-300, 398-412, 539-42, 915-17, 922-29, 934-37, 942-45, 950-53, 958-61, 966-68, 973-77, 983-88, 993-94, 1000-03, 1008-11, 1066-74, 1158-63, 1169-70.

Despite Dr. Bennett's continuous treatment of plaintiff; his 2011 assessment of "osteochondroitis, right knee, consistent with degenerative joint disease" (*id.* at 958); his 2012 assessments of "right knee pain consistent with torn meniscus" (*id.* at 915); two MRIs taken in 2013 that evidenced tears in plaintiff's right (*id.* at 1197) and left knees (*id.* at 1204); and plaintiff's subsequently filed SSI claim, the ALJ give little weight to Dr. Bennett's opinion related to plaintiff's physical limitations. *Id.* at 574. Noting Dr. Bennet did "not modify [his RFC] restrictions as a result of [plaintiff's] alleged knee impairment" (*id.* at 570 n.1), the ALJ largely justifies his discounting of Dr. Bennett's opinion based on the doctor's response to one question on his 2013 Residual Functional Capacity Questionnaire. *Id.* at 573. The questionnaire asked, "What is the earliest medically supported date that these limitations apply," to which Dr. Bennett replied, "November 2006." *Id.* at 573, 1067.

In a May 2010 "Summary of health history," Dr. Bennett included a one paragraph description of plaintiff's physical limitations. *Id.* at 539. He found plaintiff should be restricted from ever lifting more than 25 pounds, engaging in sitting or standing for more than one hour, or frequently bending or twisting. *Id.* at 539. The ALJ compares this with Dr. Bennett's April 2013 assessment, which the doctor relates back to plaintiff's condition in 2006, and ponders why the doctor "does not clarify how, in May 2010, the plaintiff could lift up-to twenty-five pounds, walk without limitations, and occasionally bend, but from November 2006 through April 2013 could only occasionally lift or carry ten pounds, walk

7

two hours a day <u>and</u> never bend." *Id.* at 573 (emphasis in original); *see id.* at 539, 1066-67.  This is a misleading comparison.

That Dr. Bennett stated in April 2013 that plaintiff's limitations began in November 2006 does not provide a legitimate basis for the ALJ's discounting of Dr. Bennett's additional limitations.  The format of the April 2013 questionnaire does not allow for Dr. Bennett to explain which limitations date to 2006 and which came later.  The changes in Dr. Bennett's assessment are compatible with plaintiff's additional knee injuries, which are opined to be a direct result of her original back problems.  *See id.* at 958-59 (assessing plaintiff's right knee injury in 2011, as resulting from plaintiff's admitted disproportionate "use of her right leg to avoid pressure on her left leg" which is severely affected by her lumbar disk problems and noting plaintiff's receipt of steroid injections in her knee to relieve the additional pain).

The ALJ next states Dr. Bennett's opinion regarding plaintiff's ability to stand and walk is inconsistent with plaintiff's self-reported limitations and medical evidence in the record.  *Id.* at 574.  Dr. Khan's July 2009 assessment of plaintiff, on which the ALJ relies, occurred approximately three months after plaintiff's second corrective back surgery.  *Id.* at 321, 574.  Although plaintiff reported that walking and standing were "not a problem," she reported this in comparison to her sitting problems, and in any event made these statements well before either of Dr. Bennett's assessments.  *Id.* at 321.  Similarly, the statements made by Dr. Khan in his November 2009 report are comparative: "[Plaintiff's] main complaint is that sitting is her *most* difficult activity.  Standing, she can do *well* with. If she moves around a little bit then walking seems to be the *easiest* for her."  Id. at 535 (emphasis added).   Taken out of context, the last sentence seems to imply walking is "easy," but in context that statement is actually made relative to how difficult the act of sitting is for plaintiff.  *Id.*

The ALJ also asserts plaintiff and her husband reported her conditions do not affect her ability to stand or walk, but again, this is based on a limited reading of their reports. *See id.* at 574. It is true that in the function reports they completed in April 2012, both plaintiff and her husband failed to check the "walking" and "standing" boxes as being affected by her conditions. *Id.* at 817, 826. But plaintiff also reports she can only walk for twenty minutes before needing to rest (*id.* at 826), and discusses her foot numbness and how it causes her to fall. *Id.* at 828. And plaintiff's husband states he does not know how far she can walk because of her pain (*id.* at 817), and opines that he thinks she should be using a walker or wheelchair because of her foot going numb. *Id.* at 818. These reports are consistent with Dr. Bennett's opinion that plaintiff is limited to walking two hours per day.

Moreover, beyond these reports identified by the ALJ, Dr. Bennett's opinion is supported by his own treatment notes. In 2012, Dr. Bennett associated plaintiff's ability to sit up for an hour with medication as an "extended duration of time" in comparison to the half-hour she can manage without medication. *Id.* at 916. The doctor also noted plaintiff's report of an "activity level increase" based on her current ability to walk up to a half a mile. *Id.* This does not contradict limiting plaintiff to walking no more than two hours in an eight-hour workday, and supports plaintiff's subjective comments. *See id.* at 1066. Additionally, Dr. Bennett's 2013 assessment of plaintiff's functional capacity is also supported by clinical findings, including "physical examinations show[ing] severe tenderness of the lumbar spine and knees, decreased sensitivity of the left foot, and decreased strength of the left leg, MRI show[ing] severe degenerative disc disease, electrodiagnostic study in 2009 show[ing] nerve damage[d] left leg." *Id.* at 1069.

An ALJ must base his or her RFC determination on the medical record as a whole. 20 CFR §§ 404.1527, 416.927; Social Security Ruling ("SSR") 96-5p.[2] One month prior to operating on plaintiff in 2009, Dr. Khan noted that plaintiff's severe, constant, and debilitating back and left lower pain continued despite her first back surgery several years prior. AR at 323. During that same time period, Dr. Berry, plaintiff's family physician, opined that plaintiff could only sit and stand or walk for one hour or less in an eight-hour day. AR at 478. Less than a year after her July 2009 follow-up with Dr. Khan, Dr. Bennett assessed plaintiff as "unable to perform any significant prolonged physical activity," which contrary to the ALJ's statements, presumably includes prolonged walking. *See* AR at 539.

The ALJ discounted Dr. Khan's opinions for some of the same reasons given for discounting Dr. Bennett's. But Dr. Bennett's and Dr. Khan's opinions about plaintiff's limited ability to sit, stand, and walk are supported by medical evidence, including many first-hand examinations of plaintiff. Neither is based solely on plaintiff's claims of pain, nor is either opinion contrary to plaintiff's statements when these statements are viewed in context. The ALJ thus failed to provide specific and legitimate reasons supported by substantial evidence for rejecting these opinions.

### 2.     Dr. Berry's and Dr. Vu's Opinions

Dr. Berry, like Dr. Bennett, treated plaintiff over the course of many years. AR at 235-69, 366-76, 382-93, 460-74, 476-83, 1015-48, 1062-64, 1076-77, 1201-03. In March 2009, Dr. Berry opined plaintiff's constant pain is precipitated by

---

[2] "The Commissioner issues Social Security Rulings to clarify the Act's implementing regulations and the agency's Thapolicies. SSRs are binding on all components of the Social Security Administration. SSRs do not have the force of law. However, because they represent the Commissioner's interpretation of the agency's regulations, we give them some deference. We will not defer to SSRs if they are inconsistent with the statute or regulations." *Holohan v. Massanari*, 246 F.3d 1195, 1203 n.1 (9th Cir. 2001) (internal citations omitted).

1  "prolonged sitting, standing, walking, stooping, [and] bending." *Id.* at 478.  Dr.
2  Berry concluded it would "be necessary or medically recommended for [plaintiff]
3  not to sit [or stand or walk] continuously in a work setting." *Id.* at 478-79.  Dr.
4  Berry restricted plaintiff from sitting, standing, or walking for more than one hour
5  in an eight-hour work day. *Id.*  Additionally, Dr. Berry stated when plaintiff was
6  seated it would be necessary for her to move every half hour and that she could not
7  return to a seated position for twenty minutes after moving. *Id.*

8      In March 2013, Dr. Berry completed a Residual Functional Capacity
9  Questionnaire. *Id.* at 1076-77.  Consistent with his earlier opinion, Dr. Berry
10 restricted plaintiff to no more than two hours of sitting, standing, or walking in an
11 eight-hour workday, which is the maximum restriction on the pre-printed form.
12 *Id.* at 1076.  The doctor also marked the highest restriction on the form limiting
13 plaintiff's total work capacity to a maximum of four hours per day.  *Id.*  Dr. Berry
14 notes plaintiff's "extreme" limitations are related to "activities precipitating pain."
15 *Id.* at 1077.

16      After acknowledging, but not describing Dr. Vu's concurring opinions
17 related to plaintiff limited ability to sit, walk, or stand, the ALJ simply disposes of
18 them as "not supported by the record." *Id.*  Dr. Vu treated plaintiff on at least nine
19 occasions between August 2010 and April 2011.  *Id.* at 873-82.  In an April 2011
20 letter, Dr. Vu describes plaintiff's "prognosis for recovery [as] poor since her
21 condition is chronic."  *Id.* at 884.  He describes plaintiff's clinical findings
22 following her two back procedures as "limited range of motion, tenderness, muscle
23 spasms, and trigger points in the lumbar spine, slow and abnormal gait, muscle
24 weakness at the paraspinal muscles and lower extremities and a positive straight
25 leg raising test."  *Id.* at 884.  Dr. Vu's earlier opinions, from April and November
26 2010, restricted plaintiff's physical ability to sit for less than three hours and to
27 walk or stand for less than two hours in an eight-hour workday. *Id.* at 453, 849.
28

The ALJ's rejection Dr. Berry's and Dr. Vu's opinions of plaintiff's ability to sit, walk, or stand rely on the same evidence used to discredit Dr. Bennett. *Id.* at 574. The ALJ "g[ave] little weight to the treating physician's opinions," but failed to provide specific and legitimate reasons supported by substantial evidence for rejecting theses opinions. *Id.* at 574-75; *see Aukland*, 257 F.3d at 103; *Mayes*, 276 F.3d at 459; *Reddick*, 157 F.3d at 720.

### 3. The ALJ Failed to Develop the Record

Upon the court ordered remand, the Appeals Counsel directed the ALJ to consolidate plaintiff's original and subsequent benefit claims, "offer [plaintiff] the opportunity for a hearing, [and] take any further action needed to complete the administrative record." AR at 690. The ALJ failed to follow this order.

All four of plaintiff's treating physicians assessed her with severe restrictions related to her physical ability to stand, walk, or sit. *Id.* at 321, 453, 478, 539, 849, 857, 884, 1066, 1076. But the ALJ's RFC only moderately restricts plaintiff's abilities to sitting for six hours and standing or walking for six hours in an eight-hour work day, with the added limitation that she "may change position briefly, for one to three minutes, every hour." *Id.* at 572. In determining plaintiff's sitting, walking, and standing limitations, the ALJ gave little weight to plaintiff's treating physicians and found the non-examining record-review opinion of Social Security physician, Dr. Sohn, "deserving of significant weight." AR at 577.

In accordance with Social Security regulations and policy, Dr. Sohn's report is based on "all [the] evidence in [the] file" as of the date the report was completed. *Id.* at 213. Dr. Sohn's report was completed on December 1, 2008. *Id.* at 218. In light of the Appeal Council's consolidation of plaintiff's subsequent 2012 SSI claim (*id.* at 690), plaintiff's documented additional severe maladies and treatments, including a second back surgery (*id.* at 321), and the substantial medical evidence dated after 2008, the ALJ's reliance on Dr. Sohn's opinion does

not provide substantial evidence and constitutes legal error. *See Reddick*, 157 F. 3d at 720 (requiring review of ALJ's opinion based on the entire record as a whole); *Day v. Weinberger*, 522 F.2d 1154, 1156 (9th Cir. 1975) (refusing to affirm opinion the ALJ based on "a[n isolated] specific quantum of supporting evidence" in a record replete with contradictions).

In 2010 Dr. Bennett opined plaintiff "will be unable to perform any significant prolonged physical activities" and "should not engage in prolonged sitting or standing." AR at 539. In 2013, Dr. Bennet assessed plaintiff as having a total work capacity of less than four hours with sitting and standing or walking less than 2 hours each. *Id.* at 1066. Dr. Berry stated after being seated, it would be necessary plaintiff to move every half hour and that she could not return to a seated position for at least twenty minutes after she moved. *Id.* 478-79. Plaintiff RFC states she "may change position briefly for one to three minutes, every hour" while sitting, standing, or walking for up to six hours. *Id.* at 572. The ALJ does not provide sufficient reasoning for failing to account for plaintiff's treating physicians' additional physical limitations.

The ALJ's expressed confusion about Dr. Bennett's newly assigned limitations in comparing the doctor's 2010 and 2013 assessments of plaintiff's functional capacity. *Id.* at 573. This confusion imposed an additional duty on the ALJ to further develop the record. *Smolen*, 80 F.3d at 1288 ("If the ALJ thought he needed to know the basis of [a doctor's] opinion[ ] in order to evaluate [it], he had a duty to conduct an appropriate inquiry, for example, by subpoenaing the physician[ ] or submitting further questions to [him or her]."); *see also Mayes*, 276 F.3d at 459-60 (ALJ has a duty to develop the record further only "when there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence"). The ALJ may do so on remand.

# V.

# **REMAND IS APPROPRIATE**

The decision whether to remand for further proceedings or reverse and award benefits is within the discretion of the district court. *McAllister v. Sullivan*, 888 F.2d 599, 603 (9th Cir. 1989). It is appropriate for the court to exercise this discretion to direct an immediate award of benefits where: "(1) the record has been fully developed and further administrative proceedings would serve no useful purpose; (2) the ALJ has failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinions; and (3) if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand." *Garrison v. Colvin*, 759 F.3d 995, 1020 (9th Cir. 2014) (setting forth three-part credit-as-true standard for remanding with instructions to calculate and award benefits). But where there are outstanding issues that must be resolved before a determination can be made, or it is not clear from the record that the ALJ would be required to find a plaintiff disabled if all the evidence were properly evaluated, remand for further proceedings is appropriate. *See Benecke v. Barnhart*, 379 F.3d 587, 595-96 (9th Cir. 2004); *Harman v. Apfel*, 211 F.3d 1172, 1179-80 (9th Cir. 2000). In addition, the court must "remand for further proceedings when, even though all conditions of the credit-as-true rule are satisfied, an evaluation of the record as a whole creates serious doubt that a claimant is, in fact, disabled." *Garrison*, 759 F.3d at 1021.

Here, as set out above, remand is required because the ALJ failed to properly evaluate plaintiff's treating physicians' opinions concerning plaintiff's sitting, standing, and walking limitations. The record has not been fully developed on these points. On remand, the ALJ shall reconsider the opinions provided by Dr. Bennett, Dr. Berry, Dr. Khan, and Dr. Vu regarding plaintiff's ability to stand, sit, and walk, and either credit each opinion or provide specific and legitimate reasons supported by substantial evidence for rejecting it. In doing so, the ALJ

shall further develop the record, as needed. The ALJ shall then assess plaintiff's RFC and proceed through steps four and five to determine what work, if any, plaintiff is capable of performing.

## VI.
## CONCLUSION

IT IS THEREFORE ORDERED that Judgment shall be entered REVERSING the decision of the Commissioner denying benefits, and REMANDING the matter to the Commissioner for further administrative action consistent with this decision.

DATED: September 29, 2015

SHERI PYM
United States Magistrate Judge